**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-CR-011-JFH** |
| **CORD SIKES HUTCHINS and
DAVID COLBERT JOHNSTON,** | |
| **Defendants.** | |

<u>**OPINION AND ORDER**</u>

Before the Court is a Joint Motion to Suppress ("Motion") [Dkt. No. 39] filed by Defendant Cord Sikes Hutchins ("Defendant Hutchins") and Defendant David Colbert Johnston ("Defendant Johnston") (together, "Defendants"). On February 26, 2024, the Court referred the Motion to Magistrate Judge Gerald L. Jackson for hearing and report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Dkt. No. 53. Judge Jackson conducted an evidentiary hearing on the Motion on March 13, 2024. Dkt. No. 59. On March 25, 2024, Judge Jackson issued his Report and Recommendation, recommending that the Motion be granted in part and denied in part. Dkt. No. 63. In accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b)(2), and in consideration of the exigencies of the Court's calendar amid the ongoing *McGirt* crisis and the need to maintain the trial date in this matter, Judge Jackson advised the parties of their right to file specific written objections to the Report and Recommendation within seven (7) days.[1] Dkt.

---

[1] *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978); *Sabal Trail Transmission, LLC. v. 7.72 Acres in Lee Cnty., Ala.*, No. 3:16-CV-173-WKW, 2016 WL 10789585, at *1 (M.D. Ala. June 6, 2016) (collecting cases). As noted by Judge Jackson, the Northern and Eastern Districts of Oklahoma have unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). *McGirt* caused an immediate increase of nearly 200% in the number of criminal cases filed in the Northern District and more than 400% in the Eastern District. *See* U.S. Courts, *Judiciary Supplements Judgeship Request,*

No. 63.  The Government and Defendant Johnston both filed timely objections to the Report and Recommendation.[2]   Dkt. Nos. 64, 65.   Both objections are related to Judge Jackson's recommendation that some, but not all, of Defendant Johnston's statements to law enforcement on May 11, 2023 be suppressed.   The Government argues that none of Defendant Johnston's statements to law enforcement should be suppressed.  Dkt. No. 64.  Defendant Johnston, on the other hand, argues that all his statements should be suppressed.  Dkt. No. 65.  Defendant Johnston also objects to Judge Jackson's finding that officers had a reasonable belief that Defendant Hutchins was at the Springer, Oklahoma residence on May 11, 2023 and to Judge Jackson's finding that his statements were voluntary and not coerced for Fourth Amendment purposes.  The Court will address the parties' objections in turn.

When a party objects to a report and recommendation, the Court is statutorily required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  28 U.S.C. § 636(b)(1).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."[3]   *Id*.  For the reasons stated herein, the Court ACCEPTS IN PART AND

---

*Prioritizes      Courthouse      Projects*      (Sept.      28,      2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects.   This extraordinary number of criminal cases thrust into federal court, virtually overnight, is unlike anything ever seen in this Country's history.  Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt*.  *Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022).  Numerous federal courts have "noted *McGirt*'s tremendous impact."  *United States v. Budder*, 601 F. Supp. 3d 1105, 1114 (E.D. Okla. 2022) (collecting cases), *aff'd* 76 F.4th 1007 (10th Cir. 2023).

[2] Defendant Hutchins did not file any objections.

REJECTS IN PART the Report and Recommendation [Dkt. No. 63] and DENIES IN PART AND GRANTS IN PART Defendants' Motion [Dkt. No. 39] as set forth in this Order.

## BACKGROUND

As a threshold matter, the Court must first resolve any objections to Judge Jackson's factual findings.  Defendant Johnston raised six (6) numbered objections under the heading "Factual Objections."  Dkt. No. 65 at 1-5.  However, upon review, Defendant Johnston does not object to the factual findings themselves, but rather to the conclusions Judge Jackson reached upon applying the facts to the law.  Nonetheless, the Court has conducted a de novo review of Judge Jackson's factual findings, including reviewing the transcript of the evidentiary hearing [Dkt. No. 67], and has also reviewed the parties' submission of electronic media [Dkt. No. 66].  The Court concurs with and adopts Judge Jackson's factual findings as outlined in the Report and Recommendation. Dkt. No. 63 at 1-8.  The Court will briefly recount the facts as relevant to the Government and Defendant Johnston's objections below.

The Eastern District of Oklahoma Violent Crimes and Fugitives Task Force ("OKED Task Force") run by the United States Marshals Service was involved in an ongoing investigation arising from the theft of fifty-three (53) firearms in Love County, Oklahoma.  Dkt. No. 62 at 1-2.  Five (5) of those firearms were recovered in Wichita Falls, Texas.  *Id.* at 1.  Another six (6) firearms were recovered from another Texas residence where Defendant Hutchins was alleged to have rented a room.  *Id.* at 2.  As a result, a Wichita County, Texas magistrate judge authorized six (6) arrest warrants as to Defendant Hutchins on April 28, 2023.  As part of its ongoing investigation,

---

The Court notes that it has received and reviewed the parties' submission of electronic media filed after the evidentiary hearing and after the issuance of Judge Jackson's Report and Recommendation. Dkt. No. 66.

the OKED Task Force adopted the warrants and began to investigate Defendant Hutchins' whereabouts. *Id*.

Through the investigation, Love County Undersheriff Trent Daniel ("Undersheriff Daniel") with the OKED Task Force, interviewed Ryan Casey Wyatt ("Wyatt"). Dkt. No. 63 at 2. Wyatt was a known associate of Defendant Hutchins' and Defendant Hutchins had previously been arrested for harboring Wyatt as a fugitive in the stolen firearms case. *Id*. Wyatt informed law enforcement that Defendant Hutchins was living at 22720 State Highway 53, Springer, Oklahoma 73458 (the "Springer Residence"). *Id*. Wyatt described the location of the Springer Residence, including notable landmarks, and told Undersheriff Daniel that a yellow Ford pickup truck and two camper/trailers associated with Defendant Hutchins would be at the Springer Residence. *Id*. at 2-3. Undersheriff Daniel had previously obtained information from Wyatt that had been "100% accurate." Dkt. No. 63 at 2-3. Additionally, two other confidential informants provided information that Defendant Hutchins was living at the Springer Residence and Undersheriff Daniel confirmed that Defendant Hutchins was not living at another address in Love County where Defendant Hutchins was previously known to reside. *Id*. at 3. Finally, Undersheriff Daniel and other members of the OKED Task Force had driven by the Springer Residence and confirmed that a yellow truck was visible from the road, just as Wyatt had stated. *Id*. In light of this information, Undersheriff Daniel was "overly confident" that Defendant Hutchins would be found at the Springer Residence. *Id*.

On May 11, 2023, the OKED Task Force gathered to execute the arrest warrants on Defendant Hutchins at the Springer Residence. Dkt. No. 63 at 3. Eight (8) individuals with the OKED Task Force in several law enforcement vehicles and a drone descended upon the Springer

Residence.[4]  *Id.*  The Springer Residence house was approximately a quarter of a mile back from the main road and the OKED Task Force made entry onto the property through an opened gate and over a cattle guard.  *Id.*  Undersheriff Daniel approached the front door of the Springer Residence with three or four other members of the OKED Task Force, while other members of the OKED Task Force, including Task Force Officer Cody Vaughn ("TFO Vaughn"), approached two men on the side of the Springer Residence.  *Id.*  A woman was also found near a camper/trailer on the property, and she indicated to officers that Defendant Hutchins was inside the home.  Dkt. No. 63 at 5.

The two men at the side of Springer Residence were Defendant Johnston and William Studeman ("Studeman").  *Id.* at 4-5.  Officers did not know either man's identity prior to that day.  *Id.* at 6.  Upon making contact with Defendant Johnston and Studeman, officers instructed them to back away from the house with their hands up.  *Id.*  The men complied and were handcuffed.  TFO Vaughn then questioned the men.  Dkt. No. 63 at 6.  TFO Vaughn had a firearm in his hands at the time of questioning but held it pointing down.  *Id.*  TFO Vaughn informed the men that the OKED Task Force was there to execute an arrest warrant on Defendant Hutchins.  *Id.*  Both men confirmed that Defendant Hutchins was inside the home at that time.  *Id.*  TFO Vaughn conveyed this information to other OKED Task Force members by radio in real time.  Dkt. No. 63 at 6.  TFO Vaughn then asked whether there were firearms inside the home.  *Id.*  Both confirmed that there were and again TFO Vaughn conveyed this information by radio.  *Id.*  Finally, TFO Vaughn asked the men if they were convicted felons.  *Id.*  Both confirmed that they were.  Dkt. No. 63 at 6-7.  Defendant Johnston also informed TFO Vaughn that the Springer Residence was his property and

---

[4]  The drone footage was provided to the Court via the parties' submission of electronic media at Dkt. No. 66.

that Defendant Hutchins had been living at the Springer Residence for several months. *Id*. Defendant Johnston was not *Mirandized* at the time of questioning and TFO Vaughn testified that his questioning of Defendant Johnston and Studeman was not for the purpose or intention of arresting the men and, in fact, neither were arrested on this day. *Id*.

Meanwhile, Defendant Hutchins was located inside the home and arrested. Dkt. No. 63 at 5. Firearms were in plain view of the officers at the time of the arrest. *Id*. Officers then applied for a search warrant for the Springer Residence, which was granted and executed later that day. *Id*. at 7. As a result, several other firearms and ammunition were found in the Springer Residence. *Id*. at 7-8.

## ANALYSIS

### I.   Defendant Johnston's Objections [Dkt. No. 65]

Defendant Johnston's objections fall within three main categories. First, Defendant Johnston objects to Judge Jackson's finding that law enforcement had sufficient reasonable belief that Defendant Hutchins was at the Springer Residence on the day the arrest warrant was executed. Second, Defendant Johnston objects to Judge Jackson's finding that a protective detention was justified under the circumstances. Third, Defendant Johnston objects to Judge Jackson's finding that his statements to law enforcement were voluntary and not coerced. Specifically, Defendant Johnston argues that questions by law enforcement while he was under protective detention were in violation of *Miranda*.

#### a.   *Reasonable Belief that Defendant Hutchins was at the Springer Residence*

The Tenth Circuit has established a two-prong test for determining whether an arrest warrant justifies an officer's entrance into a home to execute the arrest warrant: the officer must "have a reasonable belief the arrestee (1) lives in the residence and (2) is within the residence at

the time of entry." *United States v. Gay*, 240 F.3d 1222, 1226 (10th Cir. 2001) (citing *Valdez v. McPheters*, 172 F.3d 1220, 1224–25 (10th Cir. 1999)).  In this context, "reasonable belief" is objective, based upon the totality of the circumstances, and requires a level of knowledge that falls below the "probable cause" and "reasonable suspicion" standards.  *Id*.

Defendant Johnston argues that the information law enforcement had regarding Defendant Hutchins' whereabouts was not sufficient to rise to the level of reasonable belief that he resided at the Springer Residence or that he would be there at the time the arrest warrant was executed.  First, Defendant argues that the information law enforcement received from Wyatt regarding Defendant Hutchins location was "likely to be stale" because Wyatt had "been in jail for a lengthy period of time" prior to providing law enforcement with this information.  Dkt. No. 65 at 2.  The Court disagrees.

Staleness of information is determined by the element of time and "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990).  Even if information is stale, it may be refreshed by more recent events or by corroboration.  *See United States v. Cantu*, 405 F.3d 1173, 1178 (10th Cir. 2005).  Further, regardless of staleness, information is often deemed reliable where the informant has provided accurate information in the past and the information provided is independently corroborated.  *See United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009).

Nothing in the record suggests that Wyatt's information was stale.  Wyatt was interviewed by law enforcement between the issuance of the arrest warrants on April 28, 2023 and Defendant Hutchins' arrest on May 11, 2023 – less than a two-week period.  Regardless of whether Wyatt had been previously incarcerated, the time element is clearly not an issue here.  Further, Wyatt had

previously been a reliable source of information for law enforcement.  Wyatt was also a known associate of Defendant Hutchins and Defendant Hutchins had previously been arrested for harboring Wyatt as a fugitive in the firearm theft case.  It was reasonable to assume that Wyatt would have accurate information regarding Defendant Hutchins' whereabouts.

Additionally, Wyatt's information was independently corroborated.  Two other individuals provided law enforcement with information that Defendant Hutchins was residing at the Springer Residence.  Wyatt also told law enforcement that Defendant Hutchins' yellow truck would be at the Springer Residence, which officers saw and verified the morning of his arrest.  Officers further confirmed that Defendant Hutchins was not residing at an address where he had been known to reside previously.  The Court is satisfied that Wyatt's information was not stale and, even if it was, had been sufficiently corroborated by other means.

Next, Defendant Johnston takes issue with the two unidentified informants.  Dkt. No. 65 at 2.  Specifically, Defendant Johnston asserts that there is a credibility issue because Undersheriff Daniel was unable to provide specific information about the individuals and their reliability at the evidentiary hearing on the Motion.  *Id*.

"A confidential informant's tip can factor into the totality of the circumstances supporting probable cause when the tip is corroborated by officers' investigations."  *United States v. Traxler*, 477 F.3d 1243, 1247 (10th Cir. 2007), as amended on denial of reh'g and reh'g en banc (Apr. 9, 2007) (citing *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004)).  "Under the totality of the circumstances test, any deficiency in one aspect of an informant's tip may be compensated for by other indicia of reliability."  *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)).

Again, the information provided by the two confidential informants was independently corroborated.  Wyatt also informed law enforcement that Defendant Hutchins was residing at the

Springer Residence, law enforcement observed a yellow truck associated with Defendant Hutchins at the Springer Residence, and law enforcement confirmed that Defendant Hutchins was not residing at another residence where he was previously known to reside.  While information from the unidentified informants would not likely be sufficient on its own, this information is factored into the totality of circumstances which support reasonable belief and does not create a credibility issue.

Therefore, based on the totality of the circumstances as previously discussed, the Court is satisfied that there was reasonable belief that Defendant Hutchins was residing at the Springer Residence and would be there on the day the arrest warrants were executed.  Accordingly, Defendant Johnston's objection here is overruled.

### b.  Protective Detention

The Fourth Amendment's protection against unreasonable seizures "includes seizure of the person."  *United States v. Maddox*, 388 F.3d 1356, 1361 (10th Cir. 2004) (citing *California v. Hodari D.*, 499 U.S. 621, 624 (1991)).  Therefore, evidence obtained as a result of an illegal seizure of a person is subject to the exclusionary rule.  *Id.*

The Tenth Circuit has held that much like a protective sweep, officer safety may justify a protective detention, or temporarily detaining a potentially dangerous person while executing an arrest warrant on another.  *Maddox*, 388 F.3d at 1362.  In determining whether a protective detention is reasonable, the Court must consider the totality of the circumstances and balance the individual's Fourth Amendment interests against the governmental interest of officer safety.  *Id.* at 1365.  Specifically, the protective detention "must be for officer safety purposes only, based upon a reasonable and articulable suspicion of potential danger to the arresting officers," and must be "no more than necessary to protect the officers from harm."  *Id.* at 1367-68 (internal citations

omitted).  Further, the protective detention should "last no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises. *Id*. (citing *Maryland v. Buie*, 494 U.S. 325, 333 (1990)).

Defendant Johnston first argues that there was no reasonable and articulable suspicion of potential danger to support a protective detention because although Wyatt informed law enforcement that Defendant Hutchins would be at the Springer Residence, he did not indicate that there would be any firearms at the Springer Residence.  The Court rejects this argument. Defendant Hutchins' arrest warrants were related to the theft of over fifty (50) firearms.  While some had been recovered, many were still at large.  The Court finds that the nature of the arrest warrants alone is sufficient to make the execution of the arrest warrants inherently dangerous. *See e.g., Maddox*, 388 F.3d at 1367, n.7 (citing cases that have held that the execution of warrants in drug related cases are inherently dangerous because weapons are commonly involved).

Further, while the Springer Residence was in a rural area, the drone footage shows that in addition to the home, there were at least eight (8) vehicles on the property and two (2) camper/trailers.  Dkt. No. 66.  While four (4) individuals can be seen in the drone footage walking about the property prior to the OKED Task Force's arrival, the number of vehicles and living spaces on the property made it unclear exactly how many individuals were on the property at that time.  Additionally, the property had many large items in the yard surrounding the home, including a horse trailer, lawn equipment, tires, fencing, and machinery, which individuals could hide behind, making it more difficult for law enforcement to secure the property.

Next, Defendant Johnston argues that both men were pat down and determined to have no weapons on them immediately after being handcuffed.  Dkt. No. 65 at 2, 5.  Therefore, Defendant Johnston argues, the men did not present any safety concerns, and the protective detention was not

10

justified. *Id*. The drone footage is unclear whether the men were fully pat down after being handcuffed. However, even if they were, the Court disagrees with Defendant Johnston's argument. Regardless of whether Defendant Johnston and Studeman were unarmed, they still posed a significant safety risk to law enforcement in executing Defendant Hutchins' arrest. For one, the property was not yet secure and Defendant Hutchins had not yet been apprehended. The drone footage makes it apparent that Defendant Johnston and Studeman were placed in handcuffs and made to stand behind a law enforcement vehicle while officers returned their attention to the house with their weapons drawn and their backs to the men. At this time, the officers did not know the identities of these men, or what their connection was to the Springer Residence or to Defendant Hutchins. Further, the men undoubtedly had more familiarity with the property than the officers and, therefore, were at an advantage. Essentially, Defendant Johnston and Studeman were placed in handcuffs and moved out of the way so that officers could safely and effectively secure the property and execute the arrest warrants. This fits squarely within the purpose of a protective detention.

Additionally, Defendant Johnston and Studeman were not handcuffed for the entire duration of the arrest. Dkt. No. 66. The drone footage shows that the handcuffs were removed from Defendant Johnston and Studeman even before Defendant Hutchins was brought out of the house. *Id*. Both men then sat on the tailgate of a law enforcement vehicle unrestrained as the OKED Task Force completed Defendant Hutchins' arrest. *Id*.

For these reasons, the Court is satisfied that the protective detention of Defendant Johnston and Studeman was justified under the totality of the circumstances and was no longer than necessary to protect the officers from harm and complete Defendant Hutchins' arrest. Accordingly, Defendant Johnston's objection here is overruled.

*c.  Defendant Johnston's Statements and the* Miranda *Requirement*

"The Fifth Amendment to the U.S. Constitution guarantees that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.'"  *United States v. Crisp*, 371 Fed. Appx. 925, 927 (10th Cir. 2010) (unpublished) (quoting U.S. CONST. AMEND. V).  Pursuant to the Supreme Court's holding in *Miranda v. Arizona*, "a suspect's statements are generally inadmissible if law enforcement officers elicited them during a custodial interrogation without giving the prescribed warnings and obtaining a waiver."  *Crisp*, 371 Fed. Appx. at 927 (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).  However, law enforcement need not administer *Miranda* warnings to everyone they question.  *Miranda* applies only to custodial interrogations.  U*nited States v. Eckhart*, 569 F.3d 1263, 1275 (10th 2009) (citing *United States v. Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000) and *United States v. Rogers*, 391 F.3d 1165, 1169 (10th Cir. 2004)).

Custodial interrogation is "questioning initiated by law enforcement officers after an individual has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602).  An individual is in custody for purposes of *Miranda* when a reasonable person in the individual's position would understand their situation to be "the functional equivalent of formal arrest."  *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007).  This is an objective inquiry that considers the totality of the circumstances.  *Id*. at 1275.  In making such a determination, the Court considers the following factors: "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made [the defendant] aware that [he] was free to refrain from answering questions, or to otherwise end the interview."  *Revels*, 510 F.3d at 1275.

Here, the Court finds that Defendant Johnston was in custody for purposes of *Miranda*. Specifically, a reasonable person in Defendant Johnston's position would understand the situation to be the functional equivalent of formal arrest. Defendant Johnston's property was descended upon by a convoy of law enforcement. The circumstances demonstrated a police-dominated atmosphere where several law enforcement officers circled the property with weapons drawn. Defendant Johnston was ordered to step away from his home with his hands up and was placed in handcuffs. Defendant Johnston was not made aware that he could refrain from answering questions or was otherwise free to go. While the Court does not find that the officer's questioning was necessarily accusatory or coercive, the totality of the circumstances indicates that Defendant Johnston was in custody for purposes of *Miranda*.[5]

However, there are certain exceptions to the *Miranda* requirement. Of relevancy here is the public safety exception. Under the public safety exception, law enforcement may question an individual in custody prior to giving a *Miranda* warning if the questioning arises out of "an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." *United States v. DeJear*, 552 F.3d 1196, 1199 (10th Cir. 2009) (citing *New York v. Quarles*, 467 U.S. 649, 659 (1984)). For the public safety exception to apply, law enforcement must have reason to believe "(1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Id.* at 1196.

The OKED Task Force was at the Springer Residence to execute arrest warrants on Defendant Hutchins for the theft of over fifty (50) firearms. As this Court has previously found,

---

[5] As the Court has found that law enforcement's questioning of Defendant Johnston constitutes custodial interrogation under *Miranda*, it need not consider the issue of voluntariness. *See Miranda*, 384 U.S. at 439, 442.

this is an inherently dangerous endeavor.  By the nature of the warrants, the OKED Task Force had reason to believe that Defendant Hutchins was armed and dangerous.  TFO Vaughn's questions to Defendant Johnston as to whether Defendant Hutchins was in the home and whether there were firearms in the home fit squarely within the public safety exception.  TFO Vaughn testified that he communicated Defendant Johnston's responses to both of these questions in real-time by radio to other members of the OKED Task Force before they entered the home.  The Court finds that these questions arise out of an objectively reasonable need to protect law enforcement and others on the property from immediate danger related to the firearms.  Therefore, Defendant Johnston's responses to the questions of whether Defendant Hutchins was in the home and whether there were firearms in the home fall within the public safety exception to the *Miranda* requirement and are admissible.  Accordingly, Defendant Johnston's objection as to these questions are overruled.

The question to Defendant Johnston regarding his status as a felon, however, does not appear to fall within any exception to the *Miranda* requirement.  Indeed, TFO Vaughn testified that he did not communicate Defendant Johnston's response to this question to other officers like he did the questions that fall within the public safety exception.  While TFO Vaughn's intentions may not have been investigative, the question regarding Defendant Johnston's status as a felon prompts a response that is testimonial in nature.  Because the Court has found that the questioning of Defendant Johnston was a custodial interrogation for purposes of *Miranda* and Defendant Johnston was not advised of his rights under *Miranda*, the Court finds that Defendant Johnston's response to questioning regarding his status as a felon should be suppressed.  Likewise, any statements Defendant Johnston made in response to questions regarding the ownership of the house should also be suppressed as to Defendant Johnston.

## II.     The Government's Objection [Dkt. No. 64]

The Government objects to the Report and Recommendation, in part, in that it argues that all statements made by Defendant Johnston are admissible under the public safety exception to the *Miranda* requirement.  Dkt. No. 64.  For the reasons set forth above, the Government's objection is overruled in part and sustained in part.

## CONCLUSION

IT IS THEREFORE ORDERED THAT the Report and Recommendation [Dkt. No. 63] is ADOPTED IN PART AND REJECTED IN PART and Defendant's Joint Motion to Suppress [Dkt. No. 39] is DENIED IN PART AND GRANTED IN PART as set forth in this Order.

Dated this 23rd day of April 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE